cc: JAO/RT
ORIGINAL
FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
JUL 19 2019
at 1 o'clock and 44 min. P M
SUE BEITIA, CLERK ES
ORIGINAL

SANDRA DEMORUELLE
P.O. Box 588
Naalehu, HI 96772
Tel. No. 808/929-9244
Email: naalehutheatre@yahoo.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

CASE NO. CV-19-00269 JAO-RT

| | |
|---|---|
| SANDRA L. DEMORUELLE, *Pro Se* PLAINTIFF | OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS [DOC # 43] WITH MEMORANDUM OF LAW; DECLARATION OF SANDRA DEMORUELLE; CERTIFICATE OF SERVICE. |
| - v. - WILLIAM KUCHARSKI, *et al.* DEFENDANTS | HEARING: TBD TIME: THE HONORABLE J. OTAKE TRIAL DATE: UNKNOWN |

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [DOCKET # 43] WITH MEMORANDUM OF LAW

Plaintiff *pro se,* Sandra L. Demoruelle, respectfully submits its opposition to *Defendants Kucharski, Goodale and Simeon's [FRCP 12(b)(1) and FRCP 12(b)(6)] [Second] Motion to Dismiss* (Case 1:19-cv-00269-JAO-RT Document 43 Filed 07/12/19 Page 1 through 22 PageID #: 269 through 289) the Plaintiff's Complaint because an Article III controversy caused by the Defendants' violation of the Endangered Species Act exists, that can be redressed through this suit.

1

Copy sent on: 7/19/2019
Notes: FSC opposition

Accordingly, Defendants' FRCP 12(b)(1) motion should be denied as "Federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them ... [and it is] the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 817 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S, 185, 188 (1959).

However, regarding the FRCP 12(b)(6) MTD, Defendants made a claim extraneous to the Complaint that solid waste, on the County-owned OVTSRC site and near-by, has created or contributed to what Defendants allege is "an imminent and substantial endangerment to human health or the environment." That evidence of solid waste dumping is properly judicially reviewed under the Resource Conservation and Recovery Act ("RCRC") 42 USC 6972 and exceeds the contents of Plaintiff's present Complaint, which only concerns emergency claims of the March through May, 2019, ESA violations so that the the FRCP 12(b)(6) motion to dismiss ("MTD") should be converted to a FRCP Rule 56 Motion for Summary Judgment, which Defense Counsel states is acceptable in second MTD footnote 6: "… should this Honorable Court determine that FRCP 56 (and not FRCP 12) is the appropriate rule, the County Defendants are entitled to judgment as a matter of law, pursuant to FRCP 56, given that Plaintiff is **not** entitled to the relief she seeks."

WHEREFORE, Plaintiff Sandra Demoruelle respectfully requests that this Court enter judgment denying Defendants' [Second] Motion to Dismiss and converting the FRCP 12(b)(6) MTD to FRCP 56 Motion for Summary Judgment and allowing the parties at least ten (10) days to provide Rule 56 Motion and Cross-Motion pleadings on the question of redressability under the ESA statute.

Dated: July 17, 2019 at Naalehu, Hawaii.

Plaintiff:

*Sandra L. Demoruelle*

SANDRA L. DEMORUELLE, *Pro Se*

# MEMORANDUM OF LAW

## I. INTRODUCTION

Plaintiff has brought a Citizen Suit against officers and/or agents of the County of Hawaii ("COH") for an urgent Endangered Species Act of 1973 ("ESA")16 U.S.C. 1531 *et seq.*, violation that is causing on-going irreparable injuries to two resident listed endangered species: the Hawaiian hoary bat and the Hawaiian hawk. The COH Department of Environmental Management ("COHDEM") has proceeded to initiate "construction timing"[1] of their Ocean View Transfer Station and Recycling Center in the month of March, 2019, and continued, unabated, the aforesaid construction activities to the present day throughout April and May, 2019, in violation of Pacific Islands Fish and Wildlife Office ("PIFWO") mitigation measures Defendants agreed to in the originally titled "Ocean View Recycling Point and Convenience Center Final Environmental Impact Statement" ("FEIS" dated April 23, 2008). Defendants expound upon the hawk and bat construction timing mitigation measures in FEIS Appendix 1E Pages 3, 102, 144 and 145, as well as detailed on Page ix of Defendants' Exhibit B, PageID #: 310.

This Honorable Court can provide Plaintiff the requested relief as under the ESA Section 11(e) (2) ENFORCEMENT: "The judges of the district courts of the United States and the United States magistrates may within their respective jurisdictions, upon proper oath or affirmation showing probable cause, issue such warrants or other process as may be required for enforcement of this act and any regulation issued thereunder."

---

[1] The FWS November 20, 2007 letter, FEIS Appendix 1E Page 2, stated: "Construction timing was not defined in the DEIS. Construction timing should avoid disturbance to possible nesting Hawaiian hawk (March – August) and breeding and pupping season for the Hawaiian hoary bats (April – August)."

4

## II. BACKGROUND

Given that Defendants continue violating the law of environmental protection with absolute impunity combined with their unwillingness to change when notified of their lawlessness, someone had to sue them. This lawsuit is a costly way to enforce environmental laws but apparently, a lawsuit is required to make the Defendants obey the law of environmental protection. As an example, environmental attorney Maxx Phillips, who represents *Keep the North Shore Country*, said the Pakini Nui wind farm at South Point in Ka'u has been able to operate since 2007 without either the Federal Incidental Take Permit or the State of Hawaii Incidental Take License "because no one has brought legal action." *Wind Farms Want Permission to Kill More Bats – A Lot More,* Civil Beat, undated.

The rarity of lawsuits to enforce ESA violations of any kind in Hawaii, the heart of species extinction on United States lands, gives added weight to the importance of this present case.

To plead for her beloved, if homely, bats, the Plaintiff, Sandra L. Demoruelle, has undertaken a difficult *pro se* suit – costly in both time and money – to attempt to save the bats, along with many other resident endangered species, by first seeking a permanent injunction order to halt further construction on already irreparably harmed habitat, then by seeking enforcement of Section 11 penalties, challenging the lack of consideration of ESA incidental take requirements for Defendant Kucharski and Goodale's projects; and by changing the way the County of Hawaii Department of Public Works ("DPW") considers ESA Section 10 permitting before issuing grading and grubbing permits for private land development on Hawaii Island.

Defendants Gregory Goodale, William A. Kucharski, and Allan G. Simeon, government officers "bound to obey the laws" (*Marbury v. Madison,* 5 U.S. 137, 157 (1803)), failed to perform their duty under the Endangered Species Act of 1973 and "knowingly" caused "take" of two resident listed endangered species through destruction of breeding and pupping habitat in clear violation of established Fish and Wildlife Service ("FWS") mitigation measures. The Defendants, William A, Kucharski and Gregory Goodale, as officers of the County of Hawaii Department of Environmental Management, "knew the essential facts" that, based on pre-approved mitigation measures, federally listed Hawaiian hawks and Hawaiian hoary bats would be "harmed" by starting construction on the County of Hawaii Ocean View Transfer Station and Recycling Center ("OVTSRC") and highway access project in March 2019 or "willfully neglected to exercise [their] duty under the Regulation to inquire into' the relevant facts."[2]

Because of the detrimental consequences of DEM Defendants' ESA Section 9 violation on Plaintiff's rights, Plaintiff seeks to enjoin all Ocean View site construction activities, which is the cause of illegal take from the on-going destruction of habitat, until DEM Defendants have been granted an Incidental Take Permit ("ITP") by U.S. Fish and Wildlife Service ("FWS") and an Incidental Take License ("ITL") from the State of Hawaii Board of Land and Natural Resources ("BLNR") for construction and operation of the solid waste transfer station.

The present suit is a purposely sharply focused ESA suit and is not, for example, challenging apparent violation of Hawaii HRS 343 ("HEPA") statutes for changing the FEIS

---

[2] *See* Brief for Respondent, McKittrick v. U.S., No. 98-5406, 1998 (filed Nov. 9, 1998) as cited in Jonathon Wood, *Overcriminalization and the Endangered Species Act: Mens Rea and Criminal Convictions for Take,* Environmental Law Reporter, 46 ELR 10496, 104503, 6-2016.

6

from a convenience center to a transfer station and changing the project entrance from Road A to direct entrance from Highway 11 without any opportunity for public comment. Plaintiff's present suit HEPA against Mr. Kucharski has been bogged in Third Circuit Court for over a year with no final ruling, so Plaintiff is reluctant to try that route a second time.[3] Similarly, the Defendants' failure to abide by their *Marbury* duty to obey the laws under the RCRA is not covered by the pleadings in this suit, so the Exhibit D and E materials should convert Defendants' Rule 12(b)(6) MTD to a Rule 56 motion for summary judgment.

In fact, Exhibits D and E bring into question the competency of the Defendants to construct and operate this transfer station because, despite their demonstrable need for this solid waste disposal project, they delayed eleven years in even begin to implement the 2008 FEIS project.

Additionally, while Defendants acknowledge that hawks and bats are known to forage in Ocean View and in the adjoining area of Manuka Park, they fail to state why the increase in vermin vectors, for example rodents and mosquitos in the piled garbage which are hawk and bat food sources, respectively, would "harm" those resident endangered species. Intuitively it would seem the more food readily available to the two endangered species the easier it would be to support their young and increase their numbers. Defendants made no linkage with the Exhibit D and E solid waste as pictured causing ESA defined "harm" to bats and hawks. Meanwhile, Plaintiff has provided clear evidence of the problem of "harm" to endangered bats and hawks residing in the area which was directly caused by Defendants' timing the Ocean View transfer station project construction for the period March through May, 2019.

---

[3] *Demoruelle v. Beck*, Civil No. 18-1-00206.

## III. STANDARD OF REVIEW

Standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, (1975). However, a motion to dismiss under Rule 12(b)(6), while often filed, are disfavored and rarely granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). ("It is axiomatic that '[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'") The issue is not whether Plaintiff will prevail, but instead, the issue is if the Plaintiff is entitled to offer evidence in support of their claims. As the US Supreme Court has stated: "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Rather, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Thus, Courts rarely grant a dismissal of a complaint without leave to amend.

Regarding conversion of the MTD to a motion for summary judgment, FRCP Rule 12(d) states that the result of presenting matters outside the pleading under Rule 12(b)(6) converts the motion to dismiss to one for summary judgment under Rule 56. The entire section regarding the impacts of solid waste dumped on and around the County of Hawaii transfer station is evidence of Defendants' failure of their duties under the Resource Conservation and Recovery Act ("RCRA") 42 USC 6972 and this evidence of solid waste dumping is properly judicially reviewed under the Resource Conservation and Recovery Act citizen suit provision and exceeds the contents of Plaintiff's present sharply focused ESA Complaint.

# IV. ARGUMENT

**A.  Dismissal for FRCP 12(b)(1) lack of subject-matter jurisdiction**

   1.   Plaintiff's "standing"

The Plaintiff bears the burden of proof on a motion to dismiss under FRCP Rule 12(b)(1) regarding lack of subject-matter jurisdiction. Providing this proof of "standing" is Plaintiff's life in service to the place called "Ka'u," consideration of which makes it hard to imagine another individual more likely to be affected by the Defendants' injury to hawks, bats and their failure to follow the law of environmental protection

Recent 9th Circuit analysis of Article III standing held that declarations describing how USDA "activities threatened their aesthetic and recreational interests in tracking and observing wolves in the wild fell under the scope of NEPA's protections and established injury-in-fact."[4] Plaintiff has made this kind of declaration: for the past forty years, the Plaintiff, Sandra Demoruelle, has been the wife and family caregiver of Joseph Demoruelle, who, as a combat infantryman awarded a Bronze Star during the War in Vietnam, was rated 100% permanent service-connected combat-disabled in a Board of Veteran Appeals decision in November 1989. (Demoruelle Second Declaration Paragraph 3). With her own disability of being on what is now called "the autistic spectrum," the Demoruelles share a need for a very quiet social life combined with both loving nature, so that on most days they spend time out driving or walking in the rural and wild country-side that constitutes the majority of the land in the large, isolated District of Ka'u. (Demoruelle Second Declaration Paragraphs 4-5). Especially treasured by Plaintiff are times that

---

[4] *Western Watersheds Project, e al. v. Grimm et al.*, No. 18-35075 (9th Cir. April 23, 2019.)

hawks or bats are sighted by one or both Mr. and Mrs. Demoruelle because it only happens 5-10% of the time (perhaps averaging once or twice monthly) with bats becoming ever more rare (as in 2015- 2019, with sightings occurring just once or twice per year). (Demoruelle Second Declaration Paragraph 6). In earlier years, for example in 1985-1990, a dozen or more sighting were made daily of bats darting about between the fauna on Kaalualu Road where the Plaintiff resides, but ever since the volcanic haze started blanketing Ka'u, and ended in 2018, fewer bats have been observed by the Plaintiff throughout the entire District. (Demoruelle Second Declaration Paragraph 7).

Plaintiff and her husband last saw a bat in Ka'u on June 2, 2019, when they were returning with a friend, Karen Bashrum, from a birthday dinner at the Kilauea Military Camp's Crater Rim Café and spotted a bat at the Highway 11 Milemarker 42 at about 6:30 pm as will be attested to in their MSJ Declarations. (Demoruelle Second Declaration Paragraph 8). The same three parties last saw a hawk soaring above Ocean View on Sunday, July 14, 2019, when they were returning from showing property at 2:30 pm around the Highway 11 73 Milemarker, and will so attest in their MSJ Declarations. (Demoruelle Second Declaration Paragraph 9).

Regarding her educational training, Plaintiff, a RN, has graduate-level PhD training in public administration and the law of environmental protection and experience in observing and commenting on agency compliance with environmental protection statutes and regulations. (Demoruelle Second Declaration Paragraph 10).

A well-qualified and vocal "watchdog" blessed with an independent and inquiring mind who strives to provide her community with the protection of government transparency and accountability, Sandra Demoruelle is acknowledged by both parties to be a "gadfly" to the County regarding compliance with environmental law. (Demoruelle Second Declaration

Paragraphs 11 - 12). She is a scholarly researcher and writer, unafraid to speak truth to power, who contributes her work to newsletters and magazines, as well as local and national media through her annual Gebbie Press PRPro subscription. (Demoruelle Second Declaration Paragraph 13). Sandra Demoruelle has a long history of using raw material and applying her editorial and public administration skills to publish written work providing transparency to her community on environmental compliance issues which are aimed at protecting endangered species and conserving their ecosystems, and Plaintiff intends to continue these activities to promote future compliance with environmental protection law. (Demoruelle Second Declaration Paragraphs 14 -15).

    2.    Plaintiff's Injury In Fact

To deny culpability, the Defense MTD including Defendant Kucharski's Declaration in Paragraph 3 states that there are "**no** endangered species at the Project site, including the Hawaiian Hoary Bat or the Hawaiian Hawk; therefore, DEM had no reason to anticipate or be reasonably certain that any endangered species would be 'take[n]' by the project." However, this is factually untrue as DEM clearly acknowledges at least four endangered species are identified as being on the Ocean View Transfer Station and Recycling Center construction site and in the immediate area when Defendants expounded upon the hawk and bat construction timing mitigation measures in FEIS Appendix 1E Pages 3, 102, 144 and 145, as well as detailed on Page ix of Defendants' Exhibit B, PageID #: 310. As well, the Defense Exhibit A *Questionnaire for Potential Applicants for Incidental Take Authorization under Section 10(a)(1)(B) of the Endangered Species Act* PageID #: 301 Paragraph 4. states that activities that "annoy the listed species" by disrupting normal behavioral patterns that include breeding, feeding and sheltering, is take

11

and "is not permitted as it is not incidental." In other words, the March through May construction timing required an ITP since the Defendants decided to risk ignoring FWS mitigation measures agreed to in the FEIS that would have avoided incidental take of hawks and bats in Ocean View.

B.  **Dismissal for FRCP 12(b)(6) redressability**

Defendants argue that Plaintiff failed to state a claim upon which relief can be granted. The Defendants' argument is that *no ... endangered species [were] present at the Project site*, citing the 2008 FEIS at p. vii, or that after the March through May construction, which included clear cutting and flat grading the low-land forest area used by nesting/brooding hawks and bats, that *no observation or signs of use by the endangered species* remained at the Project site, which therefore means that no Incidental Take Permit ("ITP") permit is required or that an ITP request is even allowed to be processed by the FWS.

However, Defendants' Exhibits provide evidence that totally discredits this Defense argument. Both hawks and bats, along with numerous other endangered species, were acknowledged as being on-site and in the area on the pages following page vii in the FEIS Executive Summary which listed, underlined, the ESA mitigation measures of the "hawk survey" and no construction activity during bat pupping in April through June. The FWS letters to the Defendants establishing the identity and habitat locality of the Project's four endangered species are further described in Exhibit C, PageID #: 311.

As a separate but related action in HID, the vivid photographs in the Defendants' second MTD Exhibits indicate the need for Plaintiff to enter a separate Resource Conservation and Recovery Act citizen suit (upon proper notice) for first impression questions of the

12

Defendants' contributor liability for failing to "abate the endangerment" of illicit dumping while the Department of Environmental Management Defendants, as the responsible County agency with authority to ameliorate this problem, waited eleven years to construct this solid waste disposal facility in Ocean View.[5] This issue of solid waste piles on their own property speaks to the basic problem named in the Complaint, namely, Plaintiff does not challenge the Defendants' authority to construct and operate an apparently-needed garbage transfer station, but the photographs of the waste laying around the Project site for over eleven years of delays calls into question **both their competency and motivation** to do so without further violating the law of environmental protection.

### III. CONCLUSION

For the reasons stated above, this Court should deny the Defendants' motion for dismissal. Having failed their duty to follow ESA statutes by failing to obtain the requisite Incidental Take Permit for commencement of construction of the Ocean View Transfer Station and Recycling Center in March, 2019, the Defendants' scofflaw attitude continue to threaten the Ka'u community with further harm to the resident endangered hawk and bat ecosystem by knowingly carrying out facility operation without the requisite HCP/ITP.

Plaintiff respectfully points to the urgency of Court action as every day causes more injury to the Plaintiff and the affected Ka'u community.

While Defendants state the defense Exhibits support their specious claim that "'no rare, threatened or endangered species are present' at the project site," in the ESA correspondence of

---

[5] DEM is also responsible for hauling and disposing of all the photographed abandoned vehicles, which are shown at length in the Defense Exhibits D and E accompanying the Second MTD.

2007, 2008 and April 29, 2019 referenced in paragraph 1 of Doc. 43-5, PageID#: 311, FWS required that the Defendants acknowledge that numerous endangered species were resident in the area and, directly to the point of this claim, in lieu of a "bat survey' to determine if bats were actually on-site, the Defendants opted to acknowledge the endangered bats were present and agreed to the ESA mitigation measure of not doing construction in the contested April and May, 2019, time period.

Further, without the FEIS-promised mitigation measure of a science-based ornithological survey within a 1/3 mile of the OVTSRC construction site for nesting hawks before proceeding, according to the contractor's invoice, the COHDEM had completed 24 % of the projects' tasks before the end of March, 2019, making it almost impossible to undo the effects of this ill-timed project. Being in violation of ESA, the COHDEM must be required to apply to the U.S. Fish and Wildlife Service for a Habitat Conservation Plan for the continued construction and future operation of the Ocean View Transfer Station and Recycling Center. By COHDEM knowing failure to provide for the future survival of the resident endangered species known to be in the area, citing the Fish and Wildlife Service Document 43-3, Item 4., PageID #: 301, the OVTSRC construction and operation activities annoy the breeding and nesting and so require an ESA permit (ITP).

The Defendants' unpermitted activities are a concrete injury to the Plaintiff and community by Defendants' carrying out the construction and operation of a dangerous facility without any consideration of incidental take. How very true that it **"is now or it is never"** to conserve the endangered Ka'u bats and hawks. *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1516 (9th Cir. 1992).

If the COHDEM is not enjoined, as Plaintiff has requested of this Court, with a Preliminary Injunction to provide ESA environmental review of the affected habitat, the County will continue to act unchecked with no transparency for citizens and no HCP/ITP to guide agency operating decisions to conserve the two species' ecosystem.

For the foregoing reasons and all the others discussed in Plaintiff's Complaint, the Defendants' [Second] Motion to Dismiss FRCP 12(b)(1) should be denied and the FRCP 12(b)(6) MTD converted to a FRCP 56 Motion for Summary Judgement, and that this case be allowed to move forward with immediate consideration of Plaintiff's Motion for Preliminary Injunction.

Dated: July 17, 2019 at Naalehu, Hawaii.

Plaintiff:

*Sandra L. Demoruelle*

SANDRA L. DEMORUELLE, *Pro Se*